[S. F. No. 12565.   In Bank.—March 29, 1928.]

ANTON BRUNSKI, Petitioner, v. INDUSTRIAL AC-
CIDENT COMMISSION OF CALIFORNIA and
PACIFIC GAS AND ELECTRIC COMPANY, Re-
spondents.

Warren H. Pillsbury for Petitioner.

G. C. Faulkner, John J. Briare and Leo H. Susman for
Respondents.

SHENK, J.—This proceeding was brought to review and
annul an order of the Industrial Accident Commission.   The
facts in brief are as follows: The petitioner, Brunski, suf-
fered a head injury in 1919 when working for the Ford
Motor Company in the middle west.   Later on he filed
suit against that company for damages.   His deposition was
taken in Kansas City in 1923, in which he stated that follow-
ing his said injury he had a roaring and thumping in his

head, had headaches and dizzy spells once or twice a week, had nervous attacks two or three times a week, and his eyes were affected. The litigation was settled by the payment to Brunski of the sum of $1,000. He then came to California and became an employee of the Pacific Gas and Electric Company. While in the employ of that company he suffered a second head injury on October 7, 1924. He was off two weeks and was then declared by the doctor as able to work, a slight scalp wound having healed in the meantime. He did not return to work for the Pacific Gas and Electric Company, but about a week later went to work for the California-Oregon Power Company and worked for about fourteen days for that company. He filed an application for an adjustment of claim with the Commission on December 10, 1924, which application was dismissed on January 31, 1925, for failure to prosecute. Again on March 13, 1925, he filed a second application for adjustment of claim. In his statement to the physicians, and in his testimony under oath before the Commission's referee, Brunski stated that he had never before had any head injury or symptoms of trouble in his head; that he was perfectly well until the time of his accident in October, 1924; that he had a slight head injury while working for the Ford Motor Company in Kansas City, but went to work three days thereafter and that said injury had no effect on him whatever; that said slight head injury was the only head injury he had ever received, except the one he had when working for the Pacific Gas and Electric Company.

With the foregoing statements by Brunski to the Commission and the reports of the physicians based on false statements made by Brunski to them, the Commission on October 22, 1925, made an award granting to Brunski two weeks' temporary total disability and fifty per cent partial disability thereafter continuing indefinitely. Within twenty days the employer, the Pacific Gas and Electric Company, filed a petition for a rehearing, which was granted.

Basing its action on the statements by Brunski to the Commission and to said physicians, the Pacific Gas and Electric Company entered into a compromise agreement with Brunski in the sum of fifteen hundred dollars and filed the same with the Commission for its approval on December 12, 1925. Seven days later the Commission entered its order

affirming said compromise agreement, basing its order of approval on Brunski's statement to the Commission and to said physicians that prior to his head injury of October, 1924, he had not received a head injury of any consequence. Shortly after the order of approval of said compromise agreement the employer discovered that the statements made by Brunski to the physicians were false and that the testimony given by Brunski before the Commission in July, 1925, was false. Thereafter, on January 16, 1926, the employer filed a petition with the Commission setting forth the alleged perjury and false statements by Brunski in obtaining the settlement and the approval of the Commission, and praying that the Commission set aside its order of approval of said settlement agreement and set the matter down for further hearing. The petition was granted and it is the order granting the same that Brunski now seeks to have annulled.

It is urged by the petitioner that the Commission was without jurisdiction to reopen the case after the expiration of the period provided by section 65 (a) of the Workmen's Compensation Act [Stats. 1917, p. 871], for a rehearing before the Commission as to any point determined in or within the issues of the former proceeding, and that this court has, by its construction of section 20 (d) of the act [Stats. 1917, p. 850], limited the continuing jurisdiction of the Commission over its orders, decisions, and awards during a period of 245 weeks to the granting of relief required by new developments occurring subsequent to the order, decision, or award in question. Or, to state the contention of the petitioner in another way, it is that the Commission's continuing jurisdiction during the 245 weeks after the date of the injury may be invoked or exercised only as to matters outside of the issues previously litigated and arising subsequent to the order, decision, or award in question. As authority for his position the petitioner cites the case of *Georgia Casualty Co.* v. *Industrial Acc. Com.*, 177 Cal. 289 [170 Pac. 625]. It is insisted that the continuing jurisdiction of the Commission is still governed by that case and the cases following it with approval. In the recent case of *Bartlett Hayward Co.* v. *Industrial Acc. Com.*, ante, p. 522 [265 Pac. 195], it was held that the Georgia Casualty Company case was concerned only with the construction of the

1913 law, and that the amendments to or re-enactments of the statute in 1917 removed the limitations on the continuing jurisdiction of the Commission declared in the Georgia Casualty Company case. It was further held that the construction of section 20 (d) of the statute as enacted in 1917 was correctly announced in the case of *Kennedy* v. *Industrial Acc. Com.*, 50 Cal. App. 184 [195 Pac. 267], and that the later cases, relying upon and adhering to the doctrine of the Georgia Casualty Company case, had not given sufficient if any notice to the effect of the change of the statute in 1917.

Under the law as announced in the Bartlett Hayward Company case, it must be concluded that the power of the Commission to open up a cause before it is present after the expiration of the period provided by statute for a rehearing, and continues until the expiration of 245 weeks from the time of the injury, provided always that the exercise of such power be predicated on "good cause shown" before the Commission. It but remains to determine herein whether the Commission abused its discretion in determining that the alleged false statements and perjury on the part of Brunski in relating to the physicians and to the Commission the history of his physical disability and upon which statements said physicians and the Commission relied was a sufficient showing of "good cause" to justify the Commission in setting aside its order of approval and directing a further hearing to be had. It cannot be doubted that false swearing as to a pertinent fact, either in support or in defense of an application for an award of compensation or other order of the Commission, is conduct most reprehensible. It strikes at the very foundation of the effective administration of the Workmen's Compensation Law by the Commission. Its design is to thwart the purpose of this law to see that right shall prevail. It is so frowned upon by the social order that not only perjury, but the subornation of perjury, are declared to be crimes amounting to a felony. But, says the petitioner, the fraud involved in the perjury must be extrinsic else the Commission may take no cognizance of it. It is conceded by petitioner that the discovery of extrinsic fraud, after the time for a rehearing has elapsed, is a "new development," even within the holding of the Georgia Casualty Company case sufficient to

justify the rescission of a previous order, decision or award, but it is insisted that the Commission has only the power of a court of equity in the premises, that is to say, that a court of equity may set aside or enjoin the enforcement of a judgment only upon a showing of extrinsic fraud, and that the same rule should apply to the powers of the Commission respecting its own orders, decisions and awards. We think the power of the Commission is not so circumscribed. In the state of Colorado the continuing jurisdiction of the Commission is provided for in the following language: "Upon its own motion, on the ground of error, mistake or a change in conditions, the Commission may at any time after notice of hearing to the parties interested review any award, and on such review may make an award ending, diminishing, maintaining or increasing the compensation previously awarded." (Colo. Sess. Laws, 1919, p. 745, sec. 110; sec. 4484, C. L. 1921.) It was also provided by the statute that any award should become final unless a petition to review the same should be filed in ten days after its entry or within the period as extended by the Commission. It was held in that state that notwithstanding the failure of either party to file a petition for a review within the statutory time, the Commission had jurisdiction to set aside an award and enter a different award if the showing before the Commission was sufficient in its judgment to prove that the prior award was based on false testimony. The court said: "It certainly was an error or mistake upon the part of the Commission if it was led by the false testimony of the witness for defendants in error to believe, and so find, that the injury sustained by the claimant was not received in the course of his employment." (*Industrial Commission* v. *Employers Corp.*, 78 Colo. 267, 272 [241 Pac. 729, 731].) So it must be held in this state that the strictness with which a litigant is bound at his peril to discover and meet perjury in an ordinary court proceeding, usually designated as intrinsic fraud, should not be applied to a proceeding before the Industrial Accident Commission in which it must be determined whether "good cause" exists for setting aside a former order, decision, or award and ordering a further hearing.

We are not now deciding that Brunski committed perjury, which was the foundation of the order of the Commission

766

in question. Nor do we understand that the Commission has finally decided that Brunski committed the alleged perjury. We do conclude, however, that the showing made before the Commission was sufficient to justify the Commission in holding that "good cause" appeared for the setting aside of its former order and ordering a rehearing.

The order is affirmed.

Richards, J., Curtis, J., Langdon, J., Waste, C. J., Seawell, J., and Preston, J., concurred.