[S. F. No. 13447.  In Bank.—January 6, 1930.]

J. E.  INGRAM et al., Petitioners, v. DEPARTMENT OF INDUSTRIAL RELATIONS, etc., and J. A. STOOL-FIRE, Respondents.

634

F. Britton McConnell for Petitioners.

Edward O. Allen for Respondents.

SHENK, J.—Petition to annul an award of the Industrial Accident Commission.

A procedural question will first be considered. The original award was made on November 24, 1926, against peti-

tioner J. E. Ingram alone. On December 16, 1926, he filed a petition for a rehearing which was denied on January 14, 1927. On February 7, 1927, he filed a "Petition to Set Aside Order Denying Rehearing and for Rehearing and for Order under Section 16, Workmen's Compensation Act." The commission on March 1, 1927, granted this petition, referring in its order to said petition as one for a "rehearing." Further hearings were had on August 15 and 24, 1927, wherein the transcript of the proceedings thereon recites that this cause came on regularly for hearing "on rehearing." Following these hearings the commission rendered its decision in writing wherein it denominated the same as its "Decision after Rehearing" and wherein it recited that "a rehearing of this cause having been duly granted, and said rehearing having been regularly heard . . . and submitted for decision, it is hereby ordered as and for the decision after rehearing that the findings and award heretofore made and filed herein be, and hereby are, rescinded and annulled and new findings and award made and substituted therefor as follows." Then follow the findings and award attacked in the present proceeding. The final decision and award were filed July 27, 1928. The petitioner, Minnie H. Ingram, on August 17, 1928, filed a petition for a rehearing of the decision and award of July 27th, which petition was denied by the commission on August 20, 1928. The petitioner, J. E. Ingram, filed no petition for a rehearing of the decision and award of July 27th. Wherefore, the respondents contend the petitioner, J. E. Ingram, has no standing before this court on this application for review. The argument is made that the commission in acting upon and denying the petition of J. E. Ingram for a rehearing on January 14, 1927, proceeded under section 64a of the Workmen's Compensation Act (Stats. 1917, p. 873); that the remedy of said petitioner as against the award of November 24, 1926, after the denial of his petition for a rehearing, was an application for a review in the courts as provided in section 67a of said act, which remedy was not pursued by him; that there is no place in the law for a second petition for a rehearing of the original decision and award, citing *Crowe Glass Co.* v. *Industrial Acc. Com.,* 84 Cal. App. 287 [258 Pac. 130]; that in granting second petition of J. E. Ingram for a so-called "rehearing" on March 1, 1927, the commission was acting pursuant

to its continuing jurisdiction under section 20d of the act, citing *Bartlett-Hayward Co.* v. *Industrial Acc. Com.*, 203 Cal. 522 [265 Pac. 195], and *Brunski* v. *Industrial Acc. Com.*, 203 Cal. 761 [265 Pac. 918]; that the remedy of the petitioner, J. E. Ingram, as against the decision and award of July 27, 1928, was to file a petition for a rehearing, which remedy was not pursued, and that the failure of said petitioner to file such petition for a rehearing has foreclosed his right to petition the court for review.

The action of the commission, both in its original and its final decision and award was taken before the decision of the District Court of Appeal in the Crowe Glass Company case and before the decision of this court in the Bartlett-Hayward and the Brunski cases. When such action was taken by the commission the right of a party to a proceeding before it to apply for a second rehearing under section 65a of the act and the powers of the commission under section 20d of the act were not clearly understood or defined The petition of J. E. Ingram filed February 7, 1927, had a twofold aspect. It was a petition for a rehearing following the original decision and award, and being a second petition for a rehearing it was in this respect unauthorized under the construction of the statute as laid down in the Crowe Glass Company case. However, it was treated by both parties as a petition for a rehearing. The commission especially treated it as such from the beginning, referring to the same as a petition for a rehearing and making its final decision of July 27, 1928, as its "Decision after Rehearing." If it were properly such no further petition for a rehearing was necessary or available as a prerequisite to an appeal to the courts for a review under the doctrine of the Crowe Glass Company case. In view of the uncertainty in the law at the time of the final award of July 27th, and further in view of the action of the commission and its attitude throughout its proceedings on the petition for rehearing filed February 7th, it would be highly inequitable to permit the commission now to prevail in its claim that its proceedings therein were not on rehearing or that the final award was not a "Decision After Rehearing." Because of the particular circumstances here presented we conclude that the petitioner, J. E. Ingram, did not forfeit his right to petition the court for a review by his failure to file a peti-

tion for a rehearing following the final decision and award of July 27th.

In its second aspect the petition of J. E. Ingram of February 7th was for an additional and further hearing on the grounds stated in the petition, thus invoking the exercise of the powers of the commission under section 20d of the act. When treated as such the proceedings thereunder were in the nature of new proceedings' under the statute and the decision and award made thereon was a final determination of such additional and further proceedings so as to necessitate a petition for rehearing as a prerequisite to the right to petition the courts for a review.

Petitioner Minnie H. Ingram, against whom an award was first rendered on July 27, 1927, filed her petition for a rehearing and there is no question of her standing as a petitioner in the present proceeding.

It appears to be assumed by both parties that the final award of the commission on July 27th was made pursuant to proceedings had in the exercise of the powers of the commission under section 20d of the act. No point is made by either party that the power so invoked was not properly exercised. It should be said, however, that the petition filed February 7th, when viewed in its second aspect, invokes the power of the commission under section 20d on the ground of newly discovered evidence only, which ground is specifically made one of the bases of a petition for a rehearing under section 65a of the act. We are not to be understood as indicating that the power of the commission under section 20d may not be invoked on this ground, but we desire to state that such power, invoked on the ground of newly discovered evidence, should be exercised with great caution and when fraud, inadvertence, mistake or excusable neglect are clearly shown. Otherwise the process of introducing evidence before the commission would be interminable and the commission might be held to abuse its discretion in the exercise of its power under section 20d.

We now pass to the second point urged by petitioners, viz., that the employment of J. A. Stoolfire, in whose favor the award was made, was both casual and not in the course of the trade, business, profession or occupation of the employer. If this be true, it is contended that Stoolfire was excluded from compensation under section 8 of the act.

The employee, Stoolfire, as an independent contractor, engaged with the petitioners to perform certain finish carpenter work on the inside of the house belonging to Minnie H. Ingram for the sum of $40. This work could not be done until the house had been lathed and plastered. Another contractor had agreed to do the lathing and plastering for the contract price of $110. It was necessary that Stoolfire await the completion of the lathing and plastering before he could commence his inside carpentering work. In the meantime he was engaged by the petitioners herein to do odd jobs outside of the house and about the place at seventy-five cents per hour. These odd jobs consisted in building a fence, a couple of garages, steps in front of the house, cleaning up the place, and in general doing whatever he was directed to do by the petitioners from time to time during the period of waiting for the inside work. While Stoolfire was painting the roof of the house at the instance of the petitioners he fell and received the injury for which compensation was sought. In performing these so-called odd jobs Stoolfire worked more than ten days and the cost of labor exceeded $100.

It is contended by the petitioner that the evidence shows without conflict that the employment in which Stoolfire was engaged when injured was separate and distinct from every other employment; in other words, that there was no continuous employment as to the odd jobs but that each was a separate employment from time to time, and that therefore the job of painting the roof and sides of the house was casual, involving in itself about sixteen dollars' worth of labor. The petitioners testified in support of this contention and the evidence so presented was sufficient to support a finding that the job of painting the roof and sides of the house was a separate and distinct employment. On the other hand the testimony of Stoolfire was sufficient to support the finding of the commission that he was employed in the capacity of "painter-carpenter-laborer," and that the odd jobs which he was called upon to perform in the period of waiting were collectively the work "contemplated" to be completed under a single employment and that each job, including the painting of the roof, was not a separate and distinct employment. It would require a too narrow construction of the Workmen's Compensation Act to hold that

a so-called "Jack-of-all-trades," employed continuously to do numerous classes of work each of a casual nature when considered by itself, should in all cases be excluded from compensation. When the work performed by such an employee is of such a nature as that it may be found, as here, that all of the odd jobs constituted one employment of the duration and value to remove it from the definition of "casual" as defined by section 8c of the act, the liberal construction of the statute enjoined upon the court should impel an approval of the action of the commission when based upon sufficient evidence. We so construe the record and action of the commission in this regard.

▮ It is also urged by the petitioners that the work performed by Stoolfire was not in the "course of the trade, business, profession or occupation of his employer," as that phrase is defined in the act. The petitioner J. E. Ingram is a lawyer and has no other regular business or profession. The petitioner Minnie H. Ingram is his wife and has no business or occupation other than housewife. The property on which Stoolfire performed his work was not the home of the Ingrams. It was acquired by one or both, the title being taken in the name of the wife. It was their purpose to repair and improve the place for rental or sale or for the occupancy of a relative and they owned no other similar property. It is upon this state of facts that the present claim is made. The statute provides that "the phrase 'course of the trade, business, profession, or occupation of his employer' shall be taken to include all services tending toward the preservation, maintenance or operation of the business, business premises or business property of the employer," and that "the words 'trade, business, profession or occupation of his employer' shall be taken to include any undertaking actually engaged in by him with some degree of regularity . . . " It was established by the petitioners beyond controversy that the undertaking of repairing and improving the premises in question was not in line with or incidental to the business, profession or occupation of either and that it was not engaged in by them or either of them with any degree of regularity. The case of *Archbishop* v. *Industrial Acc. Com.*, 194 Cal. 660 [230 Pac. 16], relied on by the respondents, does not, when carefully considered, support the respondents' cause. That case went off on the question

of the burden of proof. The petitioners in the present case have sustained the burden on this point. In the case of *Hedges* v. *Bedford and the Industrial Acc. Com.* (S. F. No. 13115), also relied on by the respondents, this court denied an application for a writ of review on August 16, 1929, on the ground that it appeared that as the petitioner, as a real estate broker, was engaged ·in repairing and remodeling houses for the purpose of either rental or sales, such undertakings were so closely related and incidental to his regular .business as to bring him within the terms of the act. On the other hand, the case of *Rissman* v. *Industrial Acc. Com.*, 190 Cal. 619 [213 Pac. 991], is not authority for the petitioner on this point, for the reason that it was conceded by the petitioners in that case that the renovating of two houses for the purposes of sale was not in the employer's business. The point was, therefore, not adjudicated. The ·Archbishop case refers in the discussion to two other cases in the following language: ''According to two other decisions—*Lauzier* v. *Industrial Acc. Com.*, 43 Cal. App. 725 [185 Pac. 870], and *Ford* v. *Industrial Acc. Com.*, 53 Cal. App. 542 [200 Pac. 667]—the making of repairs necessary and incidental to the upkeep of four small frame houses, in the one case, and a flat in the other, which the owners let for hire, is not a business within the contemplation of the compensation act.'' *Pacific Employers Ins. Co.* v. *Department of Industrial Relations*, 91 Cal. App. 577 [267 Pac. 880], is a ruling to the same effect.

But it was settled in the Rissman case that the employment must not only ·be casual but also not in the business, etc., of the employer in order that the employee be excluded from the benefits of the act. It was therein said, at page 622 of 190·Cal.: ''The defense of casual employment is not available unless the employment was not only casual as defined by the act, but also not in the trade, business, profession, or occupation of the employer. If either of these conditions be present the employee comes within the provisions of the act.'' Therefore, when the commission, as here, found on sufficient evidence that the employment of Stoolfire was not casual, the fact that his employment did not tend toward the preservation, maintenance or operation of the business, business premises or business property of his em-

ployer did not necessarily exclude him from the benefits of the act.

Finally it is contended by the petitioners that the claim is barred as against Minnie H. Ingram. This contention is based on the following undisputed facts: Stoolfire was injured on April 27, 1926. His claim was filed against J. E. Ingram, alone, within six months, to wit, on June 9, 1926. After a hearing thereon findings and award were made which were set aside and additional hearings had. During these additional hearings it was made to appear that Minnie H. Ingram was a necessary party to the proceeding. The showing as to such necessity was that it appeared that the title to the property on which Stoolfire worked was in Minnie H. Ingram; that during the course of the work Stoolfire dealt with both husband and wife, received instructions from each and was paid in part by each. Accordingly, an order was entered making Mrs. Ingram a party defendant. This order was made on September 20, 1927, or nearly seventeen months after the injury. On October 14, 1927, Minnie H. Ingram filed an answer in which she pleaded, among other things, that the application for compensation as to her was barred by limitation of time under section 11 of the act. The commission found that Minnie H. Ingram was estopped from setting up the bar of the statute. No reason for the estoppel is stated in the findings, but in the record it appears that on December 14, 1926, or nearly eight months after the injury, an affidavit was subscribed and sworn to by Minnie H. Ingram, which affidavit was attached to the petition for rehearing filed by J. E. Ingram on December 16, 1926. In this affidavit Minnie H. Ingram deposed that she was the owner of the real property on which the applicant for compensation performed his labor and claimed to have been injured; that she observed the work done by the applicant, kept a record of the work and paid him for the same; that she was unavoidably absent from the city and could not be present at the hearing theretofore had before the commission; that she requested her attorney, J. E. Ingram, to ask the referee to continue said hearing until she could be present, and that she was informed that the referee refused the request; that "she has a meritorious defense to the above entitled cause and respectfully requests that she be permitted to give her testi-

mony on account of not being present at the hearing; also, that she is actually the defendant in said cause and not the said J. E. Ingram; that he was acting for her on said premises in her absence only, and that if judgment should be ·declared in this cause she would be the party responsible only''; that she verily believed that if she had been present and had testified at said hearing ''no judgment would have been entered against her or the said J. E. Ingram.'' With the foregoing affidavit before it the commission denied the petition for a rehearing on January 14, 1927. Notwithstanding said order of denial in the face of said affidavit, the commission found that Minnie H. Ingram was estopped from claiming the limitation of time as against the order making her a party defendant in said proceeding on September 20, 1927. It must be remembered that said affidavit was filed nearly eight months after the injury when the six months' period of limitation had long since expired and that when the order was entered making Minnie H. Ingram a party she promptly filed her answer setting up the bar of the statute. We find none of the elements of estoppel present in her acts or conduct. The commission and Stoolfire were informed by the testimony of J. E. Ingram on August 12, 1926, within four months after the injury, that Minnie H. Ingram owned said property, but no action was taken within the six months' period to make her a party. There was no estoppel of record against the claim of the bar of the statute and the elements of equitable estoppel as set forth in section 1962, subdivision 3, of the Code of Civil Procedure are not present. ''The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectation upon which he acted. Such change of position is strictly forbidden. It evidences fraud and falsehood, and the law abhors both.'' (*Seymour* v. *Oelrichs*, 156 Cal. 782 [134 Am. St. Rep. 154, 106 Pac. 88, 94], citing *Carpy* v. *Dowdell*, 115 Cal. 687 [47 Pac. 695], quoting from *Dickerson* v. *Coligrove*, 100 U. S. 580 [25 L. Ed. 618]; 10 Cal. Jur., p. 626.) The petitioner, Minnie H. Ingram, was guilty of no act of commission or omission prior to the running of the statute in her favor by which the status or rights of the employee or the authority of the commission were in anywise prejudiced and at no time has she

waived her rights under the statute. When she was ordered into the proceeding as a party she interposed the bar of the statute and has at all times relied upon the same. "The general rule is well settled that, when new parties are brought in by amendment, the statute of limitations continues to run in their favor until thus made parties. The suit cannot be considered as having been commenced against them until they are made parties." (37 Cor. Jur. 1066, and cases therein cited.)

Assuming that it might be held that there was no estoppel on the part of Minnie H. Ingram to interpose the bar to the statute, it is further argued by the commission that the claim against her is not barred because of the provision in section 11 of the act, which section specifies the six months' period. The proviso is as follows: "provided, that the filing of an application with the commission for any portion of the benefits provided by this act shall render this section inoperative as to all further claims of any person or persons for compensation arising from the same transaction, and the right to present such further claims shall be governed by the provisions of section twenty (d) and section sixty-five (b) of the act." It is argued that as the claim against J. E. Ingram was timely filed it must follow that the claim asserted against Minnie E. Ingram about seventeen months after the injury was a "further claim" as contemplated by the proviso. The contention is without merit. The words "further claims," as used in the statute, plainly refer to additional claims against the named employer, which additional claims are not mentioned in the original application or to claims for "further disability" as the latter phrase is subsequently used in the section. And the language "of any person or persons" after the phrase "further claims" includes other claimants for compensation against the same employer arising from the same transaction. (*Fogarty* v. *Department of Industrial Relations*, (Cal.) 269 Pac. 641; *Great Western Power Co.* v. *Industrial Acc. Com.*, 196 Cal. 593 [238 Pac. 662].) It is assumed that, on the facts as they developed during the additional hearings before the commission in this matter, the petitioners herein were subject to a joint and several liability on account of the injury. Satisfaction from one would therefore be satisfaction as to both. Consequently this is not a case where the bringing

644

in of an additional party is essential to a recovery against the person already a party. The claim for compensation is against the employer or employers if there be more than one. In a case of this sort the statute affords the claimant six months to proceed against his employer and the words "further claims" do not relate to an additional employer, but to additional claims against the same employer.

From what has been said it follows that the award as to Minnie H. Ingram must be annulled and that the award as to J. E. Ingram must be affirmed.

It is so ordered.

Richards, J., Seawell, J., Preston, J., Langdon, J., Waste, C. J., and Curtis, J., concurred.