[S. F. No. 15562. In Bank.—May 1, 1936.]

MERRITT–CHAPMAN & SCOTT CORPORATION (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and RALPH B. SMITH, Respondents.

R. P. Wisecarver for Petitioners.

Everett A. Corten and Emmet J. Seawell for Respondents.

CURTIS, J.—This is a proceeding to review an order of the Industrial Accident Commission, setting aside a previous order of the commission and vacating the award therein granted to the injured employee against his employer and the employer's insurance carrier, and granting to said injured employee an increased award for permanent disability.

Petitioners seek the annulment of this latter award upon the ground that the commission acted without and in excess of its jurisdiction in reopening the cause under the claimed authority of section 20 (d) of the Workmen's Compensation Act. We are of the opinion that petitioners' contention is clearly correct and the award must be annulled. Although other grounds are also presented for a reversal of the award, as this is the main ground presented and is determinative of the matter, we do not deem it necessary to discuss them.

 Section 20 (d) of the Workmen's Compensation Act which furnishes the authority for the continuing jurisdiction of the commission, provides that, ''The commission shall have continuing jurisdiction over all its orders, decisions and awards made and entered under the provisions of section six to thirty-one inclusive, of this act and may at any time, upon notice, and after opportunity to be heard is given to the parties in interest, rescind, alter or amend any such order, decision or award made by it *upon good cause appearing therefor,* such power including the right to review, grant or regrant, diminish, increase or terminate, within the limits prescribed by this act, any compensation awarded, upon the grounds that the disability of the person in whose favor such award was made has either recurred, increased, diminished or terminated; provided, that no award of compensation shall be rescinded, altered or amended after two hundred forty-five weeks from the date of the injury. Any order, decision or award rescinding, altering or amending a prior order, decision or award shall have the same effect as is herein provided for original orders, decisions or awards.'' (Italics ours.)

The leading case defining the power of the Industrial Accident Commission under this section is the case of *Bartlett*

*Hayward Co.* v. *Industrial Acc. Com.*, 203 Cal. 522 [265 Pac. 195]. Prior to the decision in this case it was held under the authority of *Georgia Casualty Co.* v. *Industrial Acc. Com.*, 177 Cal. 289 [170 Pac. 625], which defined the continuing jurisdiction of the commission under the 1913 statute, that the power of the commission was limited to alter or amend its awards to the situation where the disability of the person in whose favor such award was made had either increased, diminished or terminated. The case of *Bartlett Hayward Co.* v. *Industrial Acc. Com.* held that the legislature, in enacting section 20 (d) of the Workmen's Compensation Act in 1917, intended thereby to broaden the power of the commission and to enlarge and expand the continuing jurisdiction of the commission beyond the power theretofore possessed by it merely to review, grant or regrant, diminish, increase or terminate any compensation awarded upon the ground that the disability had recurred, increased, diminished or terminated, and to embrace the power to rescind, alter, or amend its orders, decisions and awards within the period of two hundred forty-five weeks "upon good cause appearing therefor". Since the decision in the Bartlett Hayward Company case, the appellate courts have consistently held that the continuing jurisdiction of the commission under section 20 (d) of said act is only limited by the expiration of the period of time therein prescribed and by the requirement that "good cause appear" for rescinding, altering or amending the former decision of the commission. Despite the fact, however, that this section has been liberally construed by the appellate courts in an effort to secure full justice to injured employees, the section itself contains a definite limitation upon the power of the commission. This is the requirement that good cause appear for rescinding, altering or amending the former award of the commission. It is self-evident, we think, that if the words, "good cause appearing" are to have any place or purpose in said statutory provision, the power of the commission to change its former orders or awards may not be predicated upon a mere change of opinion by the commission as to the correctness of its original decision, but there must exist some good ground, not within the knowledge of the commission at the time of making the former award or orders, which renders said original award or orders inequitable. In the absence of any such circumstance justi-

fying a reexamination of the controversy, the commission is powerless to act, and the former award or orders are final and invulnerable. In other words, the existence of some fact or circumstance which warrants the conclusion that the challenged award is inequitable is a necessary element to the exercise of the continuing jurisdiction of the commission under the authority of section 20 (d).

In the case of *Bartlett Hayward Co.* v. *Industrial Acc. Com.*, 203 Cal. 522, 532 [265 Pac. 195, 199], the question of what constitutes good cause was discussed. The court said: "What constitutes 'good cause' depends largely upon the circumstances of each case. The term is relative. It may be assumed that the determination of the commission as to what constitutes 'good cause', while entitled to great weight, would not be conclusive." The court therein held that, upon the facts presented in that case, the mistake or inadvertence of the commission in giving to an injured workman a rating of twenty-five per cent permanent disability, when as a matter of law on the undisputed facts he was entitled to a rating of one hundred per cent permanent disability, constituted "good cause". The mistake of the commission was occasioned by the fact that, subsequent to the granting of the award, this court upon application for a review of a similar award in another case, held that an injured employee who at the time of his injury was blind in one eye, was entitled to one hundred per cent permanent disability rating for the loss of his remaining eye. The good cause therefore, upon which the award was amended in the Bartlett Hayward Company case consisted of a decision of an appellate court disclosing the error of a rule for disability rating theretofore applied by the commission. A change in the physical condition of an injured employee is also, of course, such a circumstance. (*Hines* v. *Industrial Acc. Com.*, 215 Cal. 177 [8 Pac. (2d) 1021].) The offer of new evidence has also been held to warrant the reopening of a cause by the commission. (*Brunski* v. *Industrial Acc. Com.*, 203 Cal. 761 [265 Pac. 918]; *Ingram* v. *Department of Industrial Relations*, 208 Cal. 633 [284 Pac. 212, 214]; *Western Pipe etc. Co.* v. *Industrial Acc. Com.*, 126 Cal. App. 225 [14 Pac. (2d) 530].) In the case of *Ingram* v. *Department of Industrial Relations* a warning with reference to the reopening of causes upon the ground of newly discovered evidence, which is applicable to the case

now before us, was given. The court there said: "We are not to be understood as indicating that the power of the commission under section 20 (d) may not be invoked on this ground, but we desire to state that such power, invoked on the ground of newly discovered evidence, should be exercised with great caution and when fraud, inadvertence, mistake or excusable neglect are clearly shown. Otherwise the process of introducing evidence before the commission would be interminable and the commission might be held to abuse its discretion in the exercise of its power under section 20 (d)." This warning is quoted with approval in the case of *Mantyla* v. *Industrial Acc. Com.*, 130 Cal. App. 139, 141 [19 Pac. (2d) 799].

No claim is made in the instant case that any extraneous circumstance other than the production of new evidence, existed which warranted a reopening of the cause. The sole question presented, therefore, is whether or not the "newly discovered evidence" offered by applicant justified the commission in reopening the cause and reversing its original award.

The chronological order of events leading up to the questioned award is as follows:

June 15, 1932. Ralph B. Smith sustained an injury which consisted of a strain in the region of the left sacroiliac joint.

November 9, 1932. Smith went to work at Mare Island Navy Yard, and worked intermittently until January 11, 1933.

January 17, 1933. Smith filed application for compensation for injury suffered on June 15, 1932. He had theretofore been furnished medical care by the insurance carrier of his employer, and had also received certain payments for his disability.

February 24, March 20, and March 25, 1933, hearings were held before referees of the commission.

July 28, 1933. An award was made by the commission. Findings of fact were made to the effect that the injured employee suffered temporary total disability continuing from June 15, 1932, to and including October 22, 1932 [which was approximately the time at which he went to work at the navy yard] ; and that said injury also caused temporary disability continuing from October 22, 1932, to and including January 16, 1933 [which was the time his work at the navy yard

terminated]. A further finding was made that, "The disability suffered by the employee after January 16, 1933, was not caused or exacerbated by injury arising out of the employment."

August 4, 1933. Smith filed petition for rehearing upon the ground that the finding that the disability after January 16, 1933, was not caused or exacerbated by the injury was not supported by the evidence.

October 2, 1933. The commission denied the petition for a rehearing.

No proceedings were taken to obtain a review of this award of the commission by an appellate court.

January 14, 1934. Smith filed a petition for reopening and adjustment of his claim.

February 8, 1934. Hearing held on application to reopen.

April 3, 1934. The commission denied petition to reopen.

May 8, 1934. Smith filed petition to reopen case.

June 13, 1934. Commission denied petition for reopening.

August 13, 1934. Smith filed another petition to reopen.

August 31, 1934. Commission denied his petition to reopen.

November 21, 1934. Smith filed his fifth petition to reopen the case upon the identical grounds upon which the former petitions were based.

November 30, 1934, and February 28, 1935. Hearing held on said application.

April 30, 1935. Former award and orders were set aside and vacated, and there was substituted a finding and award in which Smith was found to be suffering from permanent disability as a result of his injury suffered on June 15, 1932, and that he was entitled to compensation in the sum of $1700, less payments made, by reason of his disability, which was rated at 17 per cent.

June 20, 1935. Petition for rehearing by the employer and insurance carrier was denied.

A reference to the above *résumé* of the proceedings before the commission shows that after the making of the original award, the applicant some five different times applied for a reopening of the case before the commission and attempted to secure a change in the original award, made after a three-day hearing of the original application and with ample opportunity afforded applicant to.produce evidence in support

of his claim. All of these petitions involved the same question at issue, the industrial causation of applicant's disability. Upon the second of these petitions to reopen another hearing was had, and further opportunity afforded the applicant to introduce new evidence. All of these petitions to reopen were denied by the commission except the last one, which was granted. It was only upon the fifth attempt that the case was reopened, all of the proceedings theretofore had annulled, and new findings and award entered. Not only was the original award a denial that the disability of the applicant suffered after January 16, 1933, was industrial in origin, but all of the denials of subsequent petitions to reopen were reiterations of this same conclusion.

A careful search of the record brought to us on this writ of review fails to disclose any newly discovered evidence sufficient to afford any adequate reason for a reopening of the case upon the fifth application and a reversal of the conclusion originally arrived at by the commission that the disability of the injured employee subsequent to January 16, 1933, was not caused or exacerbated by the injury of June 15, 1932. At the first hearing it was an admitted fact in the case that Smith on June 15, 1932, while in the employ of the Merritt-Chapman and Scott Corporation, as a pile-setter, suffered injuries which arose out of and occurred in the course of his employment. At said hearing the issue developed was whether the continuation of the pain in Smith's lower left back was due to the injury or whether Smith was in fact suffering from systemic infections which caused intermittent disabilities and symptoms to appear which were not caused by or related to the injury of June 15, 1932. It was the position of the employer and insurance carrier that the injury of June 15, 1932, resulted only in a moderate strain which in the normal course of events would have cleared up within a few weeks, but that the continued pain in the lower left back claimed by Smith, which was at times more pronounced than at other times and which flared up upon extra physical exertion or emotional disturbances, was due to an infectious arthritis arising out of existing focal infections. The reports of the several different doctors who had treated and examined Smith during the period between the injury and the hearing strongly substantiated this position. A clinical laboratory report of Lucien D. Hertert, and an exami-

nation by Dr. James McClelland confirmed the presence of focal infections. Smith in his support of his claim that his back condition was caused by the injury filed medical reports by Dr. W. C. Eidenmuller and Dr. E. L. Blackmun which stated that Smith's disability was caused by traumatic arthritis due to the injury. Dr. Blackmun based his conclusion upon the fact that although there was a history of focal infections it had been cleared up for some time. In addition to the medical reports there was introduced evidence by Smith that during the time he was working at the navy yard he had complained of his back hurting him and that he had quit work on January 11, 1933, because of pain in his back, rather than because he had received a notice that he and other workmen were to be laid off the next day because of lack of work.

It is obvious from the original findings made that, upon the conflict of evidence thus developed, the commission agreed with the position taken by the employer and the insurance carrier. The findings and award made were to the effect that the employee had suffered an injury on June 15, 1932, by which he was totally disabled until October 22, 1932, that during the period of time he worked at the navy yard he was partially disabled and was entitled to receive compensation for such partial disability, but that subsequent to January 16, 1933, the disability which he suffered was not "caused or exacerbated by injury arising out of the employment". It is to be noted in this regard that the finding does not state that Smith was no longer suffering from a disability subsequent to January 16, 1933. In fact, the words "the disability suffered by the employee after January 16, 1933", necessarily carries the implication that subsequent to that date, the employee did continue to suffer a disability. The findings concede that Smith was for a time totally disabled by the injury and that for the period of time during which he worked at the navy yard he was partially disabled. For both of these periods he was granted compensation. Any subsequent evidence offered of testimony of coworkers at the navy yard that he suffered from pain in his back while at work merely confirmed the award already made by the commission and adds nothing to the main issue decided by said award, that is to say, that the disability suffered after January 16, 1933, was not industrial in causation. Likewise, any

testimony with reference to whether or not he quit work at the navy yard because of pain in his back or because he was laid off for lack of work is also irrelevant to this particular issue. Unless, therefore, Smith could produce new evidence relevant to the particular issue of whether or not the disability suffered by him subsequent to January 16, 1933, was industrial in causation, the finding that it was not of industrial causation must stand as the final determination of the commission. The only testimony offered by Smith upon this particular issue subsequent to the original hearing was the report of two doctors, Dr. Kilgore, dated November 9, 1933, and Dr. Neill P. Johnson, dated December 30, 1933. The report of Dr. Kilgore was filed as an exhibit in conjunction with Smith's fourth application to reopen the case. The report contains a statement that, "Examination of this man shows still well marked limitation of motion and sensitiveness of the spine in the lumbar region and he claims persisting pain in his back especially upon exertion." As before noted, the issue involved was not whether the disability continued, this was conceded, but whether or not it was caused by the injury. This report simply shows a continuance of the disability. In any event, this application to reopen the cause was subsequently denied by the commission. The report of Dr. Neill P. Johnson, which had been filed upon the hearing of the fifth application to reopen the cause, was favorable to Smith's position. However, it had already been offered and received in evidence upon the hearing of February 8, 1934, held upon Smith's second application to reopen the case, and subsequent thereto said application had been denied by the commission. The letters of H. W. Foreman and P. D. Barry, officials of the Western Pacific Railroad Company, to the effect that Smith's name had been dropped from the seniority roll of the company for the reason that he was not in physical condition to return to train service and his disability was brought on during the time he was working for another company, were only laymen's opinions as to the continuance of the disability, and obviously offer no competent proof that the disability claimed to exist actually resulted from the injury of June 15, 1932.

To sum up the above discussion, after a careful examination of the record, we are satisfied that upon its final determination and reversal of the original award, the commission

did not have before it any competent, relevant evidence which had not theretofore been before it and passed upon by it, either by the original award or by its orders denying the various subsequent applications to reopen. If there are any slight exceptions to this statement, they concern facts and events occurring long prior to the previous hearings, and the various petitions presented do not contain any allegation nor give any good reason why such evidence was not produced at an earlier hearing. ██ Section 65 (a) specifies that in making application for a rehearing—and the same rule is applicable we think to applications to reopen the cause under section 20 (d)—the applicant may apply for a rehearing upon the ground "that the applicant has discovered new evidence, material to him, *which he could not, with reasonable diligence, have discovered and produced at the hearing*". (Italics ours.) This record is replete with instances of offers of evidence, claimed to be newly discovered, which, in the absence of most unusual circumstances, must have been available to the applicant at a former hearing. In one instance, at least, evidence was offered as newly discovered upon the petition for rehearing when the witness had already testified to the same effect at the previous hearing. This practice of offering evidence before the commission piecemeal is certainly to be discountenanced.

We think the language used by Stephens, J., in his concurring opinion in the case of *Western Pipe etc. Co.* v. *Industrial Acc. Com.*, 126 Cal. App. 225, 229, is peculiarly appropriate here. It is as follows: "Any break in the rule of finality of decision is regrettable. Courts presided over by trained judges are very strictly limited in their power of opening cases after judgment. The value of knowing that a certain judgment is final is greater in most cases than the possibility of advantageous change. The temptation to present perjured or colored testimony to meet a condition revealed in the first trial is often too great to be successfully resisted. These are good reasons, and there are others, supporting the doctrine of finality of decision as applied to courts. They certainly apply with equal force to judgments rendered by commissions untrained in our system of jurisprudence."

We are constrained to hold that the record before us fails to disclose any good cause for a reopening of the case by the

commission and a reversal of the original findings and award. The commission was, therefore, without jurisdiction to make the "Order Altering and Amending Findings and Award for Good Cause appearing under Section 20 (d)", made and entered on April 30, 1935. Said order is therefore annulled, and the original award of July 28, 1933, is hereby reinstated.

Conrey, J., Langdon, J., Waste, C. J., and Shenk, J., concurred.